CENTER TOWNSHIP OF MARION COUNTY, Indiana, and William R. Smith, in his official capacity as Center Township Trustee, Appellants (Defendants),

v.

Lindberg COE, James W. Jones, John Doe, David Hendley, Terri Lainge, William Collins, Richmond Miller, and Stephanie Stewart–Jackson, On behalf of themselves and all others similarly situated, Appellees (Plaintiffs).

No. 49A02–8909–CV–455.

Court of Appeals of Indiana, Second District.

June 13, 1991.

Allen N. Smith, Jr., Moore, Smith & Bryant, Indianapolis, for appellants.

Richard A. Waples, Peggy A. Hillman, Indiana Civil Liberties Union, Fran Quigley, Indianapolis, for appellees.

BUCHANAN, Judge.

### CASE SUMMARY

Defendants-appellants Center Township of Marion County, Indiana (Center Town-

ship) and William R. Smith, the Center Township Trustee (Trustee), appeal from the trial court's grant of an injunction in plaintiffs-appellees Lindberg Coe, et al.'s (Appellees) class action lawsuit, claiming the trial court erred when it failed to dismiss the action, when it ordered the Trustee to provide shelter for the class, and when it determined the Trustee had violated the Appellees' constitutional rights.

We affirm.

### FACTS

The facts most favorable to the trial court's judgment reveal that the Appellees brought suit against Center Township and the Trustee on behalf of the homeless poor in Center Township. The trial court certified the class as "all persons who, as of January 25, 1989, and thereafter, are poor, homeless persons in Center Township, Marion County, Indiana, and *eligible for shelter assistance* from the Center Township Trustee...." *Record* at 316 (emphasis supplied).

The Appellees' complaint alleged the Trustee had failed to satisfy his statutory duties to provide shelter for the homeless and claimed some of the Trustee's practices violated the constitutional rights of the homeless. The Appellees sought injunctive relief and asked the court to order the Trustee to comply with the relevant statutes and refrain from violating the class' constitutional rights.

After several evidentiary hearings, the parties stipulated that the trial court's findings of fact and conclusions of law and preliminary injunction would be the court's final judgment and injunction.

On August 21, 1989, the trial court entered the following findings and conclusions:[1]

"1. The plaintiff class is likely to prevail on the merits of their statutory and constitutional claims because the Trustee is not sufficiently discharging his mandatory statutory obligation to provide the homeless poor in Center Township with emergency shelter assistance....

2. The trustee is obligated under I.C. 12–2–1–6, 10(b) and 20(a) to provide the plaintiff class with emergency shelter assistance....

3. The homeless poor people of Center Township have an urgent need for transportation assistance and emergency daytime and nighttime shelter assistance which the Trustee is not adequately providing....

4. The Trustee partially discharges his mandatory obligation to provide emergency shelter by reimbursing private religious mission shelters for the feeding and sheltering of the homeless, however, the shelters become full, have numerous restrictions on their services and require those people staying there to attend religious services....

5. There are insufficient emergency family shelters in Center Township, with the result being that many families, including children, are turned away....

6. There are insufficient emergency shelter facilities in Center Township for those homeless who have had any alcohol to drink or who are in need of detoxification and medical treatment for substance abuse problems....

7. The Trustee recognizes that he has a statutory obligation to provide emergency shelter assistance, but claims that he lacks the funds necessary to sufficiently discharge his obligation....

8. The Trustee has not yet exhausted his statutory remedies to obtain more funding....

9. Numerous members of the plaintiff class, especially women and children, and those individuals with substance abuse problems, are unable to obtain overnight and daytime shelter....

10. The Trustee's failure to adequately discharge his statutory duty to provide for the shelter needs of the plaintiff class violates the due process rights of the plaintiff class....

---

1. The trial court's findings contained lengthy citations to supporting evidence, which have been redacted from our recitation of the court's findings.

11. The Trustee's provisions for the emergency shelter needs of those homeless individuals who are able to secure space in the shelters and lack of provision for the emergency shelter needs of those homeless who are unable to gain admittance to the shelters violates the latter classes' [sic] rights to the equal protection of the law as guaranteed by the fourteenth amendment to the U.S. Constitution and Art. I, Sec. 23 of the Indiana Constitution....

12. The Trustee's use of religious missions which require attendance at religious services as a condition of shelter, violates the rights of those individuals who object to attending such services to the free exercise of religion, their rights to freedom of conscience and belief, their right to worship according to the dictates of their own conscience, and their right not to be compelled to attend any place of worship, as guaranteed by the first amendment to the U.S. Constitution, and Art. I, Sections 2, 3 and 4 of the Indiana Constitution. This practice may also violate the establishment clause of the first amendment to the U.S. Constitution and the prohibition against any public monies being spent for the benefit of any religious institution, as prohibited by Art. I, Section 6 of the Indiana Constitution....

13. The Trustee has an obligation to provide any necessary deposit or security payments for long-term housing and is presently fulfilling that obligation....

14. The Trustee inadequately discharges his obligation to provide shelter assistance by substantially limiting the stock of long-term housing available to qualified applicants for such assistance to those rental units and landlords willing to accept the Trustee's 'Landlord's Agreement' as it now exists....

15. The Trustee inadequately discharges his obligation to provide shelter assistance by refusing to provide applicants for shelter assistance with a list of landlords with vacancies and willing to accept the 'Landlord's Agreement.' This substantially limits the ability of applicants to secure such housing....

16. The provisions in the Trustee's 'Landlord's Agreement' that provide that the Trustee may cancel the agreement upon ten days written notice; that the landlord must waive legal rights to eviction for untimely rental payments; and that rental payments are not to be made until the agreement is received back into the Trustee's office, rather than when the tenant takes possession of the premises; are unreasonable and work to substantially limit by ninety-percent or more the otherwise available housing for qualified applicants for shelter assistance from the Trustee....

17. The failure of the Trustee to discharge his statutory and constitutional duties to provide shelter to the homeless poor places members of the plaintiff class in grave risk of physical and emotional harm, including:

(a) greater susceptibility to physical ailments, infirmities and life-threatening weather conditions; and,

(b) greater risk of physical assault by others, (over one-third of the homeless have been victims of physical assault while homeless)....

18. Members of the plaintiff class will suffer immediate and irreparable physical and emotional harm if a preliminary injunction is not granted ordering the Trustee to provide for their emergency shelter needs....

19. The plaintiff class' remedies at law are inadequate because no money damages can insure that the Trustee will follow his statutory and constitutional obligations, and because no amount of money damages can adequately compensate the plaintiffs for the severe, life-threatening effect of the Trustee's failure to provide them emergency shelter.

20. The public interest would be served by the issuance of a preliminary injunction because the health and safety of the homeless poor would be protected and because the will of the people of Indiana, as expressed through the laws passed by their elected representatives, and by the Indiana and United States Constitutions, would be served.

21. The balance of harm weights [sic] in the plaintiffs' favor. The harm of not issuing an injunction is great because of the severe life-threatening conditions suffered by plaintiffs; the harm to the Trustee of issuing an injunction is minimal because all that is required is that the Trustee perform his statutory and constitutional obligations and because the Trustee has not exhausted his statutory sources of revenue.

Based on the foregoing conclusions, it is hereby ORDERED as follows:

1. Plaintiff's Motion for Preliminary Injunction pursuant to Trial Rule 65(A), is hereby GRANTED.

2. Plaintiffs' Motion To Certify Class Action is GRANTED.

3. Defendant's Motion to Dismiss and Motion to Stay Discovery are DENIED.

4. The Center Township Trustee shall provide emergency daytime and evening shelter for those class members who are unable to secure such space in the existing private shelters or who object to participating in the mandatory religious services of the private religious missions. It is clear that increased shelter capacity for families and individuals with substance abuse problems is required, as is twenty-four hour availability of such shelter. The Trustee retains the discretion in determining whether to provide this shelter by maintaining a public shelter or by contracting with private shelter operator(s) or other shelter providers, such as motels or hotels.

5. The Center Township Trustee shall provide transportation assistance to class members to seek and accept employment. The Trustee retains discretion in determining whether this aid is to be provided by contacting [sic] with the Metro Bus public transportation system or some other private vendor. However, those class members who are not physically able to take the bus must be provided an alternative mode of transportation.

6. The Center Township Trustee shall pay rental deposits for those class members who have located housing but who are unable to pay any required deposits themselves. The Trustee may retain the right to collection of the deposit from the leasee [sic] and/or the landlord upon termination of the lease or upon the ability of the leasee [sic] to pay the deposit themselves.

7. The Center Township Trustee shall cease to limit the housing otherwise available to qualified applicants by the requirement of the landlord signing the Trustee's present 'Landlord's Agreement.' If a Landlord's Agreement is to be used, such an agreement shall include a 30–day cancellation notice provision instead of the present 10–day cancellation notice provision, shall not require a landlord's waiver of a right to evict for non-payment and shall provide that the rent shall be due when the tenant takes possession of the premises.

8. The Center Township Trustee shall continue shelter assistance, including rental payments, so long as the recipient remains eligible under Indiana law for such assistance.

9. The Center Township Trustee shall request that the Marion County Health and Hospital Corporation make inspections no less than twice a year of all facilities that the Center Township Trustee reimburses for the sheltering of class members. These inspections shall document the cleanliness of the premises, the services available to residents, the restrictions, if any, placed upon the residents and the nutritional quality of the food served. The Trustee shall keep records of these requests and reports and shall not refer applicants for assistance to those facilities that the Trustee believes and/or these reports indicate do not meet basic standards of health, safety, and cleanliness."

*Record* at 322–32.

## ISSUES

The Trustee presents five issues for our consideration, which we consolidate and restate as:

1. Whether the trial court erred when it failed to dismiss the Appellees' claim?
2. Whether the trial court's order was contrary to law?
3. Whether the Trustee's practices violated the Appellees' First Amendment rights?
4. Whether the Trustee's practices violated the Appellees' Equal Protection rights?

## DECISION

*ISSUE ONE*—Did the trial court err when it failed to dismiss the Appellees' claim?

*PARTIES' CONTENTIONS*—The Trustee asserts that the trial court should have dismissed the Appellees' claim because the Appellees had not exhausted their administrative remedies. The Appellees respond that they demonstrated they would suffer irreparable harm if they were required to exhaust their administrative remedies and they claim their complaint raised constitutional issues beyond the competence of the administrative agency.

*CONCLUSION*—The trial court properly refused to dismiss the cause of action.

The Trustee seeks to plow under the Appellees' claim by contending the administrative remedies provided by Ind.Code 12-2-1-18(a) (1988) should have been exhausted, and therefore the trial court did not have jurisdiction of the claim, citing *United States Auto Club, Inc. v. Woodward* (1984), Ind.App., 460 N.E.2d 1255, *trans. denied.* IC 12-2-1-18(a) allows for an appeal to the board of county commissioners by an applicant for poor relief if the applicant is not satisfied with the Trustee's decision.

■ While a plaintiff must normally exhaust administrative remedies before being allowed access to a trial court, exceptions to the general rule apply when the plaintiff's compliance with the administrative procedure would be futile, when the procedural statute is void, or when the plaintiff would suffer irreparable harm if forced to comply with the procedure. *New Trend Beauty School v. Ind. State Bd. of Beauty Culturist Examiners* (1988), Ind.App. 518

N.E.2d 1101; *South Bend Fed'n of Teachers v. National Educ. Ass'n.* (1979), 180 Ind.App. 299, 389 N.E.2d 23, *trans. denied.*

The supreme court articulated another exception in *Wilson v. Bd. of Ind. Employment Sec. Div.* (1979), 270 Ind. 302, 385 N.E.2d 438. In *Wilson*, the supreme court considered a claim by a plaintiff who was denied unemployment compensation. The claimant did not raise the issue of the denial of her individual claim, but rather, challenged the constitutionality of the procedures used by the defendant. The supreme court concluded:

> "In the present case, the question presented is of constitutional character. With all due respect, we think that the resolution of such a purely legal issue is beyond the expertise of the Division's administrative channels and is thus a subject more appropriate for judicial consideration.
>
> In sum, we hold that given the constitutional character of the issue presented by Wilson's complaint, it was not necessary for her to press the issue through administrative channels as a precondition to judicial review."

*Wilson, supra* at 305, 385 N.E.2d at 441.

■ The trial court determined that the Trustee's failure to discharge his statutory duties placed the Appellees in grave risk of physical and emotional harm, and decided that they would suffer immediate and irreparable harm if a preliminary injunction was not granted. *Record* at 329–30. These findings were supported by substantial evidence. The existence of irreparable harm here unmistakably establishes a valid exception to the general requirement of the exhaustion of administrative remedies. *See South Bend, supra.*

Further, the trial court also determined that the Trustee's practices violated the Appellees' constitutional rights, including their first amendment religious rights as well as their due process and equal protection rights. *Record* at 326–27. Given the constitutional character of the Appellees' claim, the exception enunciated in *Wilson* also supports the trial court's refusal to dismiss the Appellees' claim.

The Trustee also attacks the preliminary injunction as being unnecessary and claims that the administrative procedures available under the statute were sufficient. *Appellant's brief* at 40–41. The evidence, however, overwhelmingly supports the trial court's factual determination that the Appellees would suffer irreparable harm if an injunction was not granted. We cannot agree with the Trustee's assertion that the administrative remedies available to the Appellees were sufficient.

*ISSUE TWO*—Was the trial court's order contrary to law?

*PARTIES' CONTENTIONS*—The Trustee argues that the trial court's order required the Trustee to perform acts which exceeded his statutory authority and which were not required by statute. The Appellees respond that the trial court's order merely ordered the Trustee to discharge his statutory duties.

*CONCLUSION*—The trial court's order was proper.

The burden carried by a township trustee has been well defined by statutory and case law.

Ind.Code 12–2–1–10(b) (1988) provides:

"Public aid by an overseer of the poor may include and shall be extended only when the personal effort of the applicant fails to provide one (1) or more of the following items: Food, including prepared food, clothing, shelter, light, water, fuel for heating and cooking, household supplies which shall include first aid and medical supplies for minor injury and illness, household necessities which shall include basic and essential items of furniture and utensils, heating and cooking stoves, and transportation to seek and accept employment."

IC 12–2–1–20(a) provides:

"It shall be the duty of the overseer of the poor, on complaint made to him that any person within his township is lying sick therein or in distress, without friends or money, so that the person is likely to suffer, to examine into the case of said person and grant such temporary relief as may be required."

The Trustee is the overseer of the poor for Center Township. IC 12–2–1–1. In *State ex rel. Van Buskirk v. Wayne Township* (1981), Ind.App., 418 N.E.2d 234, this court carefully analyzed IC 12–2–1–10(b) and concluded:

"Construing the poor relief laws as a whole, IC 12–2–1–1 *et. seq.*, it is clear that the legislature extended to the Trustee discretion in the administration of poor relief assistance as regards the nature and extent of the poor relief to be afforded given the particular circumstances of the individual applicant. However, the legislature limited that discretion when it directed the Trustee to provide to the poor all necessary relief in the most equitable and expedient method possible. We conclude IC 12–2–1–10(b) further limits the Trustee's discretion, requiring him to provide certain enumerated types of relief if he finds that the applicant has been unable to provide them for himself. Because the words 'may' and 'shall' are inextricably linked, IC 12–2–1–10(b) *requires* the Trustee as overseer of the poor to include the enumerated items as forms of relief which the Trustee is *required* to extend only when he finds the personal efforts of the applicant have failed to provide the same."

*Van Buskirk, supra* at 241 (emphasis in original).

IC 12–2–1–8 states, in pertinent part:

"Whenever an overseer shall ascertain by investigation that any poor person or persons or families require assistance, he shall furnish to them such temporary aid as may be necessary for the relief of immediate and pressing suffering...."

In construing this statute, this court in *Wayne Township v. Hunnicutt* (1990), Ind. App., 549 N.E.2d 1051, *trans. denied*, determined: "The determination of need is placed within the Trustee's discretion; however, once need is determined, the Trustee is *required* to furnish the assistance." *Id.* at 1053.

■ The Trustee contends that the trial court ordered him to provide transportation between shelters to recipients of poor re-

lief, and claims that such an order exceeds the bounds of the statute, which mandates transportation only for recipients to seek and accept employment. A review of the trial court's order, however, does not support this contention.

Paragraph 5 of the trial court's order is specific: "The Center Township Trustee shall provide transportation assistance to class members *to seek and accept employment.*" *Record* at 331 (emphasis supplied). The trial court's order simply requires the Trustee to comply with the statute. Paragraph 5 also says the Trustee retains the discretion to provide the transportation in the most cost effective manner available, but it does not give the Trustee the discretion to refuse to comply with the statute.

■ The Trustee complains of the extent of the shelter assistance the trial court ordered him to supply. The trial court's order provided:

"4. The Center Township Trustee shall provide emergency daytime and evening shelter for those class members who are unable to secure such space in the existing private shelters or who object to participating in the mandatory religious services of the private religious missions. It is clear that increased shelter capacity for families and individuals with substance abuse problems is required, as is twenty-four hour availability of such shelter. The Trustee retains the discretion in determining whether to provide this shelter by maintaining a public shelter or by contracting with private shelter operator(s) of other shelter providers, such as motels or hotels."

*Record* at 330–31.

The Trustee claims that there is no statutory authorization for him to provide shelter for homeless individuals who have consumed alcohol or who are need of detoxification and medical treatment for substance abuse problems. *Appellant's brief* at 28–29. However, IC 12–2–1–8 can be logically construed as contemplating relief to "any poor person," and IC 12–2–1–20(a) refers to "any person ... [who] is lying sick therein

or in distress...." Similarly, IC 12–2–1–10(b) refers to "applicants." Each of these statutes, particularly IC 12–2–1–20(a), requires the Trustee to supply relief to eligible homeless individuals in need of detoxification or other medical treatment. The Trustee's argument appears to be that the lack of a specific designation in the statutes relieves the Trustee of his statutory duty. However, given the broad encompassing nature of statutes' designations (e.g. "any poor person"), only those groups that are specifically excluded by the statutes appear to be unentitled to relief. *See Hunnicutt, supra* (statute, IC 12–2–1–6(e), excluding recipients of Assistance to Dependent Children program from receiving relief, prevails over other statutory provisions). The Trustee cannot refuse to provide statutory benefits to eligible individuals unless the *statute* excludes them. As the statute does not exclude individuals with substance or alcohol abuse problems from being eligible for assistance, the Trustee must come forth with the statutory benefits for these individuals.

■ Part of the Trustee's argument is that he is not authorized to provide emergency daytime and nighttime shelter because IC 12–2–1–8.5 limits the Trustee to expending only $10,000 without the approval of the county executive. This limit has been changed. IC 12–2–1–8.5 was enacted in 1989 and amended in 1990 to increase the spending limit to $100,000 for those townships with populations over 8,000:[2]

"(a) As used in this section, 'shelter' means a facility that provides temporary emergency housing.

(b) A township trustee may establish, purchase, acquire, maintain, or operate a shelter for families needing temporary housing assistance.

. . . . .

(d) A township having a population of at least eight thousand (8,000) may not expend more than one hundred thousand dollars ($100,000) to implement this sec-

---

**2.** Because the Trustee has challenged the prospective application of the trial court's order, we

do not consider whether the previous $10,000 limit was inadequate.

tion without the approval of the county executive."

The Trustee cites the expenditure of $1.4 million for housing in 1988 as evidence that the Trustee would be incapable of providing the ordered relief within the statute's budget constraint. We conclude, however, that IC 12–2–1–8.5 limits expenditures only on "temporary emergency housing ... *for families* ...." *Id.* The statute does not require executive approval for expenditures for emergency housing for other classes of applicants, such as single men or women or homeless individuals in need of detoxification or other medical assistance.

■ The statute also does not limit the Trustee's expenditures for the provision of temporary emergency housing to families that do not require the establishment, purchase, acquisition, maintenance, or operation of a shelter. The Trustee has the discretion to obtain temporary emergency housing from private shelter vendors or hotels and motels. The statute limits *how* the Trustee may provide shelter assistance to families, it does not excuse the Trustee's obligation to provide shelter to those who are eligible.

The $1.4 million expended by the Trustee in 1988 included all forms of housing relief, not just emergency housing for families. Therefore the Trustee's claim that the statutory amount is insufficient is not supported by the evidence. The Trustee's argument that IC 12–2–1–8.5 limits him ignores the broad scope of the entire statutory scheme.

The trial court's order does not require the Trustee to perform any act not required by statute, and does not require the performance of any act unauthorized by statute. The Trustee was only ordered to discharge his statutory duties and the trial court clarified what those duties are.

The order leaves intact the Trustee's broad discretion to determine whether an individual is eligible for poor relief and the most practical method of providing that relief. As this court recognized in *Van Buskirk*, the statute gives this discretion to the Trustee. The trial court did not order the Trustee to provide relief to any-

one who was not eligible under the statute, the class was certified as only those individuals who were *eligible* for relief. IC 12–2–1–10(b) mandates that the Trustee extend relief only when the personal effort of the applicant has failed to secure one of the statutory benefits. The trial court's order leaves to the Trustee the task of determining whether a particular applicant is qualified under the statute.

Similarly, it is for the Trustee to determine the most efficient way to provide the relief mandated by the statute. The order does not require the Trustee to build shelters or to expend any more funds than are necessary for compliance with the statute.

■ The statutory duty to provide benefits is not limited by practicality. Temporary lack of funds is not an excuse. At no place in the statutory plan of providing benefits can it be implied that the Trustee's duty may be tempered by lack of sufficient funds. To the contrary, I.C. 12–2–14–1 to –48 details the process by which distressed townships (townships that are unable to fund the requisite relief) may overcome financial difficulties. If a township cannot provide the benefits mandated by the statute, it does *not* have the option of failing to provide benefits; rather, it must follow the statutory guidelines developed for such an eventuality.

In short, the trial court ordered the Trustee to comply with the statute, nothing more.

*ISSUE THREE*—Did the trial court err when it concluded the Trustee violated the Appellees' First Amendment rights?

*PARTIES' CONTENTIONS*—The Trustee claims that because it was the religious missions that required attendance at religious services as a condition of being granted shelter, and not the Trustee, the Appellees' rights were not violated. The Appellees retort that the compulsory attendance at religious services as a condition of receiving statutory benefits violates their rights.

*CONCLUSION*—The Appellees' First Amendment rights were violated.

■ The trial court determined that the Trustee's practice of using religious missions to provide shelter to the homeless violated the Free Exercise and Establishment Clauses of the United States and Indiana Constitutions. The Trustee does not argue that compulsory attendance at religious services does not violate the constitution, but rather, he asserts that because the *missions* required the attendance, and not the Trustee, there was no "state action" and that the *Trustee* did not violate the Appellees' rights.

The Trustee, in his deposition, described the procedures used by his office to discharge his statutory obligation to provide shelter. The Trustee stated that only two types of shelter assistance was offered—permanent housing through landlord agreements and emergency shelter provided by the religious missions operated under the umbrella of the Salvation Army. *Deposition* at 13. Any individual seeking emergency shelter assistance was referred to a religious mission, and there were no other shelters available. *Deposition* at 21, 37. The Trustee was explicit that no other alternatives were provided. *Deposition* at 24.

The trial court determined that the missions had numerous restrictions on their services and that they required the attendance at religious services as a condition for receiving shelter assistance. *Record* at 324. The Trustee indicated he was made aware of such mandatory attendance through complaints by poor relief recipients. *Deposition* at 34–5. The Trustee pays the missions for the provision of shelter services. The missions itemize charges for poor relief recipients and the Trustee sends reimbursement vouchers directly to the missions. *Deposition* at 19–20. To summarize, the only manner in which the Trustee attempts to fulfill his statutory obligation to provide emergency shelter is to *pay* religious missions for their shelter services.

The United States Supreme Court considered a substantially similar argument as to the lack of state action in *West v. Atkins* (1988), 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40. In *West,* the plaintiff brought suit against the State for failing to provide adequate medical care to him while he was a prisoner. The State responded that the physician who provided the inadequate care was not a State employee, but that he was merely an independent contractor, and therefore the State claimed the physician was not a "state actor." The Supreme Court was not convinced:

"The fact that the State employed respondent pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other 'state employees' does not alter the analysis. It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract."

*Id.* at 56, 108 S.Ct. at 2259 (footnote omitted).

The Supreme Court went on:

"As the dissent in the Court of Appeals explained, if this were the basis for delimiting § 1983 liability 'the state will be free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to "private" actors, when they have been denied.' [*West v. Atkins,* 815 F.2d [993], at 998]" [4th Cir.1987].

*West, supra* 487 U.S. at 56 n. 14, 108 S.Ct. at 2259 n. 14.

And so it is here. The Trustee cannot avoid its constitutional responsibilities by contracting with private organizations to supply the relief the Trustee is obligated by statute to provide to the Appellees. The Appellees had a statutory right to shelter and the Trustee's action compelled many of them to attend religious services as a condition of exercising that right.

Other cases have held that that mandatory attendance at religious services as a condition of receiving statutory benefits violates constitutional rights, e.g. "a person cannot be compelled to choose between the exercise of a First Amendment right and participation in an otherwise available public program." *Thomas v. Review Bd. of Ind.* (1981), 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624.

In *Lynch v. Indiana St. Univ. Bd. of Trustees* (1978), 177 Ind.App. 172, 378 N.E.2d 900, *cert. denied* 441 U.S. 946, 99 S.Ct. 2166, 60 L.Ed.2d 1048, this court determined that a professor's reading from the Bible at the beginning of his class violated his student's freedom to believe as they wished. Requiring the Appellees to attend religious services similarly violates their freedom to believe as they choose.

Article I § 4 of the Indiana Constitution provides that: "No preference shall be given, by law, to any creed, religious society, or mode of worship; and *no person shall be compelled to attend,* erect, or support, any place of worship, or to maintain any ministry, against his consent." Ind. *Const.* art. I § 4 (emphasis supplied). The Trustee's practice patently violates this provision.

■ Another facet of this constitutional question arises from Article I § 6 of the Indiana Constitution: "No money shall be drawn from the treasury, for the benefit of any religious or theological institution." Ind. *Const.* art. I § 6. In *State ex rel. Johnson v. Boyd* (1940), 217 Ind. 348, 28 N.E.2d 256, the Indiana supreme court considered this provision in connection with a city's use of a parochial school. In *Boyd,* the court was faced with a city's use of school buildings donated by a church after it had closed its parochial school. The city retained the church's nuns as teachers who became city employees. The nuns taught the course of study prescribed by the State Board of Education and the superintendent of the school system closely monitored the schools to assure no sectarian instruction was permitted.

In determining the schools were not parochial, and therefore not a violation the Indiana Constitution, the supreme court focused on the total control of the schools exercised by the city government. Unlike the situation in *Boyd,* the Trustee exercises no control over the missions and makes no effort to separate the missions' sectarian purpose from the statutory benefit to the Appellees. So under the rationale of *Boyd,* the payment of public funds to religious missions which they use for religious purposes violates Article I § 6 of the Indiana Constitution.

Thus we must conclude that the Trustee's use of the missions under these circumstances does violate the Appellees' constitutional rights. The trial court's order does not, however, prohibit the use of religious missions as vendors of shelter services if the missions do not condition the receipt of shelter on attendance at religious services. As long as the missions provide the statutorily mandated benefit in a manner which does not infringe the Appellees' constitutional rights, the use of missions to provide shelter services is within the broad discretion of the Trustee.

*ISSUE FOUR*—Did the trial court err when it determined the Trustee's practices violated the Appellees' Equal Protection rights?

*PARTIES' CONTENTIONS*—The Trustee contends that he does not make an invidious distinction between classes of citizens and that the statute does not create a suspect classification. The Appellees respond that the Trustee's practices fail to adequately provide for the needs of homeless women and families, and therefore violate the equal protection rights of homeless women and families.

**1361**

*CONCLUSION*—The trial court correctly decided the Trustee's practices violated the Appellees' Equal Protection rights.

The Trustee's argument is based on a misunderstanding of the trial court's conclusion, i.e. that he violated the Appellees' Equal Protection rights because of the difference in the availability of long and short-term housing. This is not so.

It was the trial court's determination that the Trustee provided insufficient emergency shelters for women, families and homeless individuals in need of detoxification and medical treatment for substance abuse problems and that the unavailability of such shelter violated the Appellees' Equal Protection rights. *Record* at 325–26. The Trustee does not challenge the trial court's findings, but rather asserts he treats all eligible persons identically. *Appellant's brief* at 39. This is plainly untrue according to the undisputed findings of the trial court.

█ The Appellees did not assert that the statutes providing for relief violated their rights, rather they argued that the Trustee's *administration* of those statutes violated their rights. A law which is non-discriminatory on its face may deny equal protection if it is discriminatorily enforced or applied. *Haas v. South Bend Community School Corp.* (1972), 259 Ind. 515, 289 N.E.2d 495; *Park Hill Dev. Co. v. City of Evansville* (1921), 190 Ind. 432, 130 N.E. 645; *Parker v. State* (1980), Ind.App., 400 N.E.2d 796; *Owens v. State ex rel. Van Natta* (1978), 178 Ind.App. 406, 382 N.E.2d 1312, *trans. denied.*

█ The Trustee's efforts to supply shelter favored single men. Providing inadequate shelter for women and families unquestionably denies them equal protection. The courts in *Eldredge v. Koch* (1983), N.Y.Sup.Ct., 118 Misc.2d 163, 459 N.Y.S.2d 960, *reversed on other grounds* 98 A.D.2d 675, 469 N.Y.S.2d 744, and *McCain v. Koch* (1986), N.Y.App.Div., 117 A.D.2d 198, 502 N.Y.S.2d 720, considered this precise question:

"This contention is so obviously meritorious that is scarcely warrants discussion. The City of New York cannot enter into an agreement (which, in essence, is what a consent decree is) that purports to set standards for shelters for the homeless, that is applicable only to shelters housing men, unless a rational basis exists for excluding women from its terms. No such basis has been urged or suggested by defendants and, indeed, none exists."

*Eldredge, supra* 118 Misc.2d at 163, 459 N.Y.S.2d at 961.

In reversing the grant of summary judgment, the appellate division had this to say about homeless men and homeless women:

"Although we, of course, agree with Special Term that homeless women are constitutionally entitled to treatment equal to that accorded to homeless men, we believe that the record discloses factual issues as to whether that right has been violated, and accordingly reverse the order appealed from and deny the motion for summary judgment."

*Eldredge, supra* 98 A.D.2d at 675–76, 469 N.Y.S.2d at 745.

If more needs to be said about this subject, the court said it in *McCain, supra:*

"Under the equal protection guarantees of the State and Federal Constitutions, 'any classification which denies to one class of needy persons public assistance which is available to all others, cannot be justified unless it is rationally related to a legitimate State interest (citations omitted).' [Citations omitted]. There is no apparent reasonable basis for the City's denial of emergency shelter to plaintiffs. This Court's recent decision in *Eldredge* ... is illustrative. There we upheld the constitutional right of homeless single women to shelter equal to that provided for homeless men under the *Callahan* decree. It is axiomatic that children need stable, secure homes and are among those least able to bear the hardships of poverty and destitution. Public policy strongly favors assistance to families with destitute children. [Citations omitted]. Indeed, the needs of plaintiffs are greater than those of single adults. [Citations omitted]. Defendants' less than

equal treatment of plaintiffs is plainly irrational."

*Id.* 117 A.D.2d at 213–14, 502 N.Y.S.2d at 729.

We agree with the courts of New York that unequal treatment of homeless women and families denies those women and families the equal protection guarantees of the State and Federal Constitutions. The trial court's *uncontested* determination that the Trustee's practices provided insufficient shelter for women and families certainly supports its conclusion that the Trustee violated the Appellees' Equal Protection rights.

From our reading of the various Indiana statutes creating certain limited benefits for eligible homeless persons and the constitutional provisions safeguarding them, there emerges a deep legislative concern for the plight of the homeless, reminiscent of the exhortation on the Statue of Liberty: "Send these, the homeless, tempest-tost to me...." No township trustee may thwart that legislative concern.

Judgment affirmed.

HOFFMAN, J., concurs.

SULLIVAN, J., concurs in result.