**LEE ALAN BRYANT HEALTH
CARE FACILITIES, INC.,
Appellant–Plaintiff,**

**v.**

**John HAMILTON, in his official capacity as Secretary of the Family and Social Services Administration, Family and Social Services Administration, Division of Disability, Aging and Rehabilitative Services, and Robert Hornyak, Acting Director Residential Care Assistance Program, Appellees–Defendants.**

No. 61A04–0210–CV–516.

Court of Appeals of Indiana.

May 16, 2003.

Janet A. McSharar, Thomas E. Schulte, Harrison & Moberly, L.L.P., Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-plaintiff Lee Alan Bryant Health Care Facilities, Inc.[1] ("Bryant Health Care") appeals the trial court's grant of summary judgment in favor of John Hamilton in his official capacity as secretary of the Indiana Family and Social Services Administration, the Indiana Family and Social Services Administration, the Indiana Family and Social Services Administration Division of Disability, Aging, and Rehabilitative Services ("DDARS"), and Robert Hornyak as acting director of the Residential Care Assistance Program ("RCAP") (collectively, "the FSSA"). We affirm in part, reverse in part, and remand.

### Issues

Bryant Health Care raises three issues for our review, which we consolidate and restate as the following two:

I. whether the FSSA's rule providing for an RCAP application waiting list contravenes Indiana Code 12–10–6; and

---

1. Both parties list Elizabeth Banic and Tanya Brenshaw as additional appellants-plaintiffs. The record does not indicate, however, that they entered an appearance with the clerk of the trial court as required by Indiana Trial Rule 3.1(A). Therefore, we do not consider them as parties to this appeal.

II. whether Indiana Code 12–10–6 requires the FSSA to fund all eligible RCAP applicants.

### Facts and Procedural History

Through DDARS, the FSSA operates RCAP. RCAP provides State funds to individuals who are in need of residential care;[2] at least sixty-five years of age, blind, or disabled; residents of a county home; and otherwise eligible for assistance under the federal Supplemental Security Income program. *See* Ind.Code § 12–10–6–1(a). To be eligible for RCAP assistance, an individual must submit an application to the local FSSA administrative unit and meet all RCAP requirements. *See* Ind.Code § 12–10–6–6. Bryant Health Care is a qualified provider of residential care to RCAP recipients.

On June 27, 1997, the FSSA promulgated Indiana Administrative Code title 460, rule 1–3.5–2 ("460 IAC 1–3.5–2"), which reads as follows:

(a) The availability of residential care assistance for an individual is contingent upon the availability of residential care assistance funding to the division.

(b) If the division director, or the director's designee, makes a written determination that sufficient funds are not appropriated or otherwise available to support the costs of residential care assistance for those not already receiving residential care assistance, the division shall accept application inquiries in accordance with the provisions specified in this rule.

(c) The director shall cause the posting of written notice in conspicuous places in county offices when a determination has been made as described in subsection (b). The written notice shall state the following:

(1) That, as of a date certain, the division is no longer processing applications for residential care assistance because of insufficient funds.

(2) Any other information the division may deem necessary.

(d) The director shall cause the posting of the notice set forth in subsection (c) at least five (5) working days prior to terminating the processing of applications for residential care assistance.

(e) Completed applications in the possession of the county office prior to the date processing applications ceases, but upon which no eligibility determination has been made, shall be processed.

(f) If the director, or the director's designee, makes a written determination that processing of applications shall not continue, the county office shall, nevertheless continue to obtain, from prospective applicants, an application inquiry containing the following information:

(1) The prospective applicant's name, address, and telephone number.

(2) Any other additional information required by the director.

(g) The county office shall inform the prospective applicant that completing an application inquiry does not mean the division will process the application inquiry. The prospective applicant shall also be informed that the mailing of the application inquiry by the county office to the division does not ensure eligibility for residential care assistance. The county office shall also provide any additional information to the prospective applicant as may be required by the director.

---

**2.** "[R]esidential care consists of only room, board, and laundry, along with minimal administrative direction." Ind.Code § 12–10–6–2(d).

(h) The county office shall send the information provided in accordance with subsection (f) to the division within five (5) working days of the receipt of the application inquiry. The county office shall also keep a copy of all application inquiries.

(i) If the director, or the director's designee, subsequently makes a written determination that sufficient funds are appropriated or otherwise available to support the costs of additional residential care assistance, the division shall do the following:

(1) Notify the county office to process residential care assistance applications of prospective applicants in the order that the application inquiry information described in subsection (f) was received by the county office, to the extent that funds will support the costs of additional residential care assistance.

(2) If sufficient funds are available to support the costs of residential care for all individuals who have completed application inquiries, the division shall resume processing residential care assistance applications and notify the county offices that the division is processing applications.

(j) If the director, or the director's designee, subsequently makes a written determination that sufficient funds are appropriated or otherwise available to support the costs of additional residential care assistance, the county office shall do the following:

(1) Notify those individuals whose application inquiries are in the possession of the county office and who may be eligible to have their application for residential care assistance processed, that a residential care assistance application may be processed. The written notice must state the following:

(A) That the prospective applicant must contact the county office to complete an application.

(B) That the prospective applicant's failure to contact the county office within fifteen (15) calendar days of notification shall result in their application not being processed.

(2) Notice shall be given to the applicant, and the facility, where necessary.

(3) The county office shall keep copies of the written notification to prospective applicants and shall make a written record of any other efforts made to notify prospective applicants.

On November 6, 2001, the FSSA announced that because of projected shortfalls in RCAP funding, it would not process any RCAP applications filed after November 21, 2001. After that date, FSSA placed all unprocessed RCAP applications on a waiting list pursuant to 460 IAC 1–3.5–2.

On December 7, 2001, Elizabeth Banic became a resident of Bryant Health Care and submitted an RCAP application to the FSSA. The FSSA placed Banic's application on a waiting list and took no further action. Bryant Health Care continued to provide residential services to Banic without RCAP assistance.

On February 20, 2002, Bryant Health Care sought declaratory judgment on the validity of 460 IAC 1–3.5–2, claiming that its waiting-list provisions are inconsistent with Indiana Code 12–10–6. Bryant Health Care also sought injunctive relief, requesting that the trial court order FSSA to process all RCAP applications and to fund all eligible RCAP applicants "retroactive to the date the [FSSA] illegally

stopped accepting applications[.]"[3] Bryant Health Care subsequently moved for summary judgment. The FSSA filed a cross-motion for summary judgment. On September 16, 2002, the trial court denied Bryant Health Care's motion for summary judgment and granted the FSSA's motion in an order reading in relevant part as follows:

21. Ind.Code § 12–10–6–2 states that an individual who is incapable of residing in his own home may apply for residential care assistance, and the determination of eligibility for residential care assistance is the responsibility of the division.

22. Thus, contrary to Plaintiffs' assertion, these statutes do not obligate DDARS to pay for residential care for all qualified individuals. Rather, DDARS is responsible for determining eligibility for the program and for expending the "money made available to" it. Ind. Code § 12–9–2–3.

23. In carrying out these responsibilities, DDARS promulgated Ind. Admin. Code tit. 460, r. 1–3.5–2.

24. Ind. Admin. Code tit. 460, r. 1–3.5–2 establishes the procedure for implementing a waiting list when a determination is made that the program's budget cannot support the costs of care of those not already on the program.

25. This regulation does not add to or detract from Ind.Code § 12–10–6 *et seq.* for the reason that nothing in these statutes expresses that the Bureau must accept to the RCAP all eligible individuals.

26. Simply put, Ind. Admin. Code tit. 460, r. 1–3.5–2 clarifies the fact that the RCAP must operate within its budget appropriation and sets out the procedure for enrolling on a waiting list when the Director determines that the program's budget cannot support additional participants.

27. Because Ind. Admin. Code tit. 460, r. 1–3.5–2 does not expand the scope of the powers given to DDARS for implementing the RCAP, the regulation is valid, and summary judgment should be entered in favor of the Defendants.

Appellant's App. at 112–13. Bryant Health Care now appeals.

**Discussion and Decision**

■ Our standard of review is well settled:

When reviewing the grant or denial of a summary judgment motion, this court applies the same legal standard as the trial court, i.e., summary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Our standard of review is not altered by cross motions for summary judgment on the same issues. A party appealing the denial of summary judgment carries the burden of persuading this court that the trial court's decision was erroneous.

*Little Beverage Co. Inc. v. DePrez,* 777 N.E.2d 74, 77–78 (Ind.Ct.App.2002) (citations omitted). The trial court entered findings of fact and conclusions thereon in its order granting summary judgment.

**3.** As Bryant Health Care's original complaint does not appear in the appellant's appendix, we requested a faxed version of the document from the trial court. We remind Bryant Health Care that an appellant's appendix must contain "pleadings and other documents from the Clerk's Record ... that are necessary for resolution of the issues raised on appeal[.]" Ind. Appellate Rule 50(A)(2)(f).

"While such findings and conclusions are helpful in clarifying the trial court's rationale, they are not binding on this court." *Foxworthy v. Heartland Co-op.*, 750 N.E.2d 438, 441 (Ind.Ct.App.2001).

### I. Validity of 460 IAC 1–3.5–2

■ Bryant Health Care contends that Indiana Code 12–10–6 requires the FSSA to process all RCAP applications and that the waiting-list provisions of 460 IAC 1–3.5–2 contravene the relevant statutes. Bryant Health Care requests that we declare 460 IAC 1–3.5–2 invalid.

■ In addressing Bryant Health Care's contention, we are mindful that a State agency has the undoubted right to adopt rules and regulations designed to enable it to perform its duties and to effectuate the purposes of the law under which it operates, when such authority is delegated to it by legislative enactment. *See Dep't. of Ins. v. Golden Rule Ins.*, 639 N.E.2d 339, 341 (Ind.Ct.App.1994) (referring to administrative boards). An agency, however, may not by its rules and regulations add to or detract from the law as enacted, nor may it by rule extend its powers beyond those conferred upon it by law. *Id.* Any regulation that conflicts with statutory law is wholly invalid. *Dep't of Pub. Welfare v. St. Joseph's Med. Ctr.*, 455 N.E.2d 981, 983 (Ind.Ct.App.1983).

As previously mentioned, an individual must submit an application to a local FSSA administrative unit and meet all RCAP requirements to obtain RCAP assistance. Ind.Code § 12–10–6–6. Indiana Code Section 12–10–6–7 provides, "Whenever the local administrative unit ... receives an application for [RCAP assistance], an investigation *shall be made* of the circumstances of the applicant to ascertain the facts supporting the application and any other information that may be required by the rules of [DDARS]." (Emphasis add-

ed.) Indiana Code Section 12–10–6–8 provides, "Upon completion of the investigation, the local administrative unit ... *shall make* a report and a recommendation to [DDARS] relative to the eligibility of the applicant for assistance, the amount of the assistance, and the date when the assistance should begin." (Emphasis added.)

Clearly, Indiana Code Sections 12–10–6–7 and –8 require DDARS to process all RCAP applications submitted to the local FSSA administrative unit. *See Sholes v. Sholes*, 760 N.E.2d 156, 159 (Ind.2001) (stating that "Indiana case law presumptively treats 'shall' as mandatory ... unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning.") (citation and quotations marks omitted). The waiting-list provisions of 460 IAC 1–3.5–2(b) through (j) are inconsistent with this requirement and are therefore invalid. *See St. Joseph's Med. Ctr.*, 455 N.E.2d at 983.

### II. Funding of RCAP Applicants

■ Bryant Health Care also contends that Indiana Code 12–10–6 requires the FSSA to fund all eligible RCAP applicants and that 460 IAC 1–3.5–2(a) contravenes the relevant statutes by making RCAP assistance contingent on RCAP funding. Bryant Health Care requests that we order the FSSA to fund all eligible RCAP applicants retroactive to the date that the FSSA implemented the waiting list.

Central to Bryant Health Care's argument is *Center Township v. Coe*, 572 N.E.2d 1350 (Ind.Ct.App.1991), in which the relevant statute required the township trustee to furnish temporary aid to persons in need. The *Coe* court determined that although the statute granted the trustee discretion in determining whether a person required assistance, it required the trustee to furnish such assistance not-

withstanding a temporary lack of funds. *See id.* at 1358.

In the instant case, Indiana Code Section 12–10–6–9 requires DDARS to "determine the amount of the assistance and the date on which the assistance should begin." Unlike the statute at issue in *Coe,* this statute does not require DDARS to provide such assistance. Additionally, Indiana Code Section 12–10–6–10 provides that RCAP assistance "shall be paid monthly ... upon warrant of the auditor of state *from money appropriated to [DDARS] for that purpose.*" (Emphasis added.) "The judicial branch is not at liberty to substitute its judgment for that of the General Assembly in making appropriations and cannot interfere with the clearly expressed appropriations of the legislative branch." *State Bd. of Fin. v. Marion Superior Ct.,* 272 Ind. 47, 51, 396 N.E.2d 340, 344 (1979). We therefore conclude that 460 IAC 1–3.5–2(a) is valid and that we may not require FSSA to fund all eligible RCAP applicants.

Having reached this conclusion, however, we note that absent sufficient appropriations to FSSA, applicants determined to be eligible for RCAP assistance may not receive this assistance. We must leave this unfortunate situation to be resolved through the administrative and the legislative process.

Affirmed in part, reversed in part, and remanded.

NAJAM and BAILEY, JJ., concur.