

FILED

Oct 01 2018, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Peter J. Sacopulos
Sacopulos, Johnson & Sacopulos
Terre Haute, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General of Indiana

Patricia C. McMath
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph Baliga, DVM,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Indiana Horse Racing<br>Commission, Indiana Horse<br>Racing Commission Staff,<br>*Appellees-Respondents* | October 1, 2018<br><br>Court of Appeals Case No.<br>17A-MI-3009<br><br>Appeal from the Madison Circuit<br>Court<br><br>The Honorable Mark Dudley,<br>Judge<br><br>Trial Court Cause No.<br>48C06-1704-MI-307 |

**Vaidik, Chief Judge.**

## Case Summary

[1] Veterinarian Joseph Baliga was accused of giving a banned substance to a racehorse. He denies the accusation, but in a disciplinary proceeding before the

Indiana Horse Racing Commission (IHRC), IHRC staff moved to have him found in default and disciplined without a hearing on the merits. Dr. Baliga opposed the motion, but an administrative law judge granted it, and the IHRC affirmed.

Dr. Baliga then filed a petition for judicial review challenging the entry of default. The IHRC filed a motion to dismiss, arguing that its entry of default is not subject to judicial review. The trial court granted the IHRC's motion, and Dr. Baliga appeals. We hold that the IHRC's entry of default (1) can be reviewed and (2) was an abuse of discretion. We therefore direct the trial court to grant Dr. Baliga's petition for judicial review and to remand this matter to the IHRC for a hearing on the merits.

# Facts and Procedural History

Dr. Baliga specializes in the care and treatment of racehorses. He is licensed generally by the Indiana Board of Veterinary Medical Examiners and separately by the IHRC. In the fall of 2016, Dr. Baliga was working at the track at Hoosier Park in Anderson. On September 30, a security officer reported that he had seen Dr. Baliga give a banned substance to a horse. Under the IHRC's regulations, found in Title 71 of the Indiana Administrative Code, this accusation exposed Dr. Baliga to two forms of disciplinary proceedings: (1) proceedings by IHRC judges at the track, who can impose a penalty of up to $5000 and a license suspension of up to one year, *see* 71 Ind. Admin. Code 10-2, and (2) proceedings by the IHRC itself, which can impose more serious

sanctions—a penalty of up to $5000 per day or occurrence and a license suspension of more than one year (or a license revocation), *see* 71 I.A.C. 10-3. Both types of proceedings were initiated against Dr. Baliga.

First, on October 1, the IHRC judges at Hoosier Park imposed a "summary suspension" of Dr. Baliga's IHRC license—a temporary suspension pending a disciplinary hearing before the judges. 71 I.A.C. 10-2-3; *see also* Ind. Code § 4-31-12-15; Ind. Code § 4-31-13-2. At Dr. Baliga's request, the judges held a hearing on the summary suspension on October 31. Dr. Baliga was in attendance with his attorney. At the beginning of the hearing, an attorney for the IHRC explained:

> As a reminder, today's hearing is not about the merits of the underlying case. The only question is whether Dr. Baliga should remain summarily suspended pending a final disciplinary hearing and a ruling.
>
> *     *     *     *
>
> Today's hearing is not on the merits of the IHRC's case against Baliga.
>
> Rather, it is only to consider whether it is appropriate for [Dr. Baliga] to remain suspended pending the hearing on any underlying charges.
>
> The merits hearing will come later. To that end it is inappropriate for the Judges to consider eyewitness testimony or evidence relating to any complaints that might later be filed.

Appellant's App. Vol. II pp. 70-71.  The executive director of the IHRC was present at the hearing and was called as a witness by the IHRC attorney.  He testified that the IHRC was still evaluating whether to take "further action" against Dr. Baliga and that the summary suspension should continue in the meantime:

> Attorney: And you understand that the reason we are here today is to determine if it is appropriate for Dr. Baliga to remain suspended, pending the final hearing on the merits of the underlying case?
>
> Exec. Dir.: Yes, I do.
>
> Attorney: Is the Commission continuing to consider the underlying merits of this case?
>
> Exec. Dir.: Yes.
>
> *    *    *    *
>
> Attorney: You indicated the Commission is continuing to investigate and consider this matter.  Once that is complete, do you expect Commission Staff will proceed with further action against Dr. Baliga?
>
> Exec. Dir.: We'll evaluate everything at the end of the investigation and make our decision from there.
>
> Attorney: Do you believe it is appropriate for Dr. Baliga to remain suspended pending the outcome of a hearing on the merits of the case?

Exec. Dir.:   Yes, I do.

*Id.* at 75-76.  Then, when Dr. Baliga attempted to testify about what happened on September 30, the IHRC's attorney objected, again explaining that the hearing "is only about whether or not the Summary Suspension should stand" and that "[t]his is not the time to hash out the merits of the case" and "[n]ot the appropriate time to have this conversation." *Id.* at 80, 87.  In her closing argument, the IHRC's attorney said, "Commission Staff respectfully requests that Dr. Baliga's license remain suspended, pending a final disciplinary hearing and ruling." *Id.* at 92.  At the end of the hearing, the judges voted to continue the summary suspension "until the merits of the case are heard." *Id.* at 94.  The presiding judge added, "[W]e should hurry along.  We should do what we can to get this case heard on the merits." *Id.*  The IHRC's attorney responded, "Understood." *Id.*  The judges did not set any future hearings or deadlines, and that was the end of their involvement in this matter.

[5]     On November 10, ten days after that summary-suspension hearing at Hoosier Park, the executive director of the IHRC initiated the second disciplinary proceeding against Dr. Baliga.  Specifically, he filed an "Administrative Complaint" with the IHRC pursuant to 71 I.A.C. 10-3-20.  The executive director alleged a variety of rule violations and recommended a penalty, including a suspension of Dr. Baliga's IHRC license and a substantial fine.  The complaint also stated that Dr. Baliga had twenty days to make a written request for a hearing, pursuant to 71 I.A.C. 10-3-20(d) ("Not later than the twentieth day after the date on which the executive director delivers or sends the

administrative complaint, the person charged may make a written request for a hearing or may remit the amount of the administrative penalty to the commission.").

[6] Shortly after receiving the administrative complaint, on November 14, Dr. Baliga filed an appeal of his summary suspension with the IHRC. However, he did not make a separate request for a hearing on the administrative complaint. On December 6—six days after Dr. Baliga's deadline for making such a request—an IHRC attorney filed a Motion for Default against him in the administrative-complaint matter.[1] The motion relied on 71 I.A.C. 10-3-20(d), which, in addition to requiring a written request for a hearing within twenty days, provides that failure to make such a request "results in a waiver of a right to a hearing on the administrative penalty as well as any right to judicial review." Later the same day, the administrative law judge (ALJ) who had been appointed in the administrative-complaint proceeding sent the parties a proposed default order.

[7] On December 12, Dr. Baliga filed a motion opposing the proposed default. In the motion, Dr. Baliga's attorney took the blame for the failure to file a request for hearing, explaining that (1) he did not realize that the administrative-complaint proceeding was separate from the summary-suspension proceeding and (2) because Dr. Baliga was actively challenging the allegation in the

---

[1] Dr. Baliga's appeal of the summary suspension remained pending for two months but was dismissed after he was found in default in the administrative-complaint matter.

summary-suspension proceeding and had already been told that there would be a hearing on the merits, he believed that a further request for a hearing was unnecessary. The ALJ was not persuaded and, on December 16, issued an order recommending that Dr. Baliga be found in default. At Dr. Baliga's request, the IHRC reviewed the matter. It affirmed and adopted the ALJ's order in full, including the penalty sought by the executive director: a five-year suspension of Dr. Baliga's IHRC license, a $20,000 fine, and a permanent ban from administering Lasix (a diuretic commonly given to racehorses) at Indiana race tracks.

[8] Dr. Baliga then filed a petition for judicial review of the IHRC's ruling. He asked the trial court to reverse the IHRC's finding of default and to remand the matter to the agency for a hearing on the merits. The IHRC filed a motion to dismiss, arguing that the trial court could not review its entry of default. The trial court granted the IHRC's motion and dismissed Dr. Baliga's petition.

[9] Dr. Baliga now appeals.

# Discussion and Decision

[10] Dr. Baliga contends that the ALJ and the IHRC should not have found him in default and that the trial court erred by dismissing his petition for judicial review. The IHRC defends the dismissal, but on a different ground than the one it advanced in its motion to dismiss. In its motion to dismiss, the IHRC argued that Dr. Baliga had failed to exhaust his administrative remedies and

that the trial court therefore lacked subject-matter jurisdiction. Appellant's App. Vol. IV pp. 24-39. On appeal, however, the IHRC says nothing about jurisdiction or the exhaustion of administrative remedies. Instead, it asserts that the Administrative Orders and Procedures Act (AOPA), Ind. Code article 4-21.5, which governs agency adjudicative proceedings and judicial review of those proceedings, "does not give the reviewing court discretion to excuse a party's default." Appellees' Br. p. 17. Insofar as the IHRC means that its entry of default cannot be challenged, we disagree.

[11] The IHRC cites Indiana Code section 4-21.5-5-4(b)(2), which provides that "[a] person who . . . is in default under this article . . . has waived the person's right to judicial review under this chapter." To be sure, this statute bars judicial review of agency actions taken before or after an entry of default, at least where the entry of default goes unchallenged or is found to be proper. But the IHRC apparently reads this provision to mean that a person who is found in default at the agency level is barred from seeking judicial review of **any** of the agency's actions, **including the finding of default itself**. In other words, the IHRC seems to take the position that an agency's finding of default is non-reviewable. The IHRC does not cite any authority in support of this novel proposition, and we think it is incorrect. A court on judicial review is authorized to grant relief

> if it determines that a person seeking judicial relief has been prejudiced by an agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of

procedure required by law; or (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d). An agency's entry of default is certainly an "agency action," and we see no reason why such an action should be immune from judicial review.

[12] The IHRC also relies heavily on its own regulation, 71 I.A.C. 10-3-20(d), which provides in part that a person's failure to request a hearing within twenty days of being served with an administrative complaint "results in a waiver of a right to a hearing on the administrative penalty **as well as any right to judicial review**." (Emphasis added). In dismissing Dr. Baliga's petition, the trial court concluded that this provision "is in accord with" Indiana Code section 4-21.5-3-24, the statute that governs the entry of default in agency proceedings. Appellant's App. Vol. II p. 10. Again, we disagree.

[13] Section 4-21.5-3-24 provides that if a party in an agency proceeding fails to "file a responsive pleading required by statute or rule" (as Dr. Baliga did here), the ALJ "may serve upon all parties written notice of a proposed default or dismissal order, including a statement of the grounds." Ind. Code § 4-21.5-3-24(a). If the ALJ chooses to do so (as the ALJ in this case did), the party against whom the proposed default was issued may, within seven days, "file a written motion requesting that the proposed default order not be imposed and stating the grounds relied upon." *Id.* at (b). If the party files such a motion (as Dr. Baliga did here), the ALJ "may either enter the order or refuse to enter the order." *Id.* at (c). In short, Section 4-21.5-3-24 provides that a person who fails

to file a responsive pleading **may**, in the discretion of the ALJ, be found in default. 71 I.A.C. 10-3-20(d), on the other hand, goes further and **requires** a finding of default when a party fails to file a responsive pleading. In this respect, the regulation is invalid. "An agency may not by its rules and regulations add to or detract from the law as enacted, nor may it by rule extend its powers beyond those conferred upon it by law. Any regulation that conflicts with statutory law is wholly invalid." *Leone v. Comm'r, Ind. Bureau of Motor Vehicles*, 933 N.E.2d 1244, 1250 (Ind. 2010) (quoting *Lee Alan Bryant Health Care Facilities, Inc. v. Hamilton*, 788 N.E.2d 495, 500 (Ind. Ct. App. 2003), *aff'd on reh'g*, 793 N.E.2d 229).

[14] Having concluded that the IHRC's entry of default is subject to judicial review, we now proceed with that review. To the extent that the trial court found the entry of default to be proper, we owe no deference to that determination. Instead, we "stand in the trial court's shoes." *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 991 (Ind. 2014); *see also Filter Specialists, Inc. v. Brooks*, 906 N.E.2d 835, 844 (Ind. 2009) ("Appellate courts stand in the same position as that of the trial court when reviewing a decision of an administrative agency.").

[15] As set forth above, a court can set aside an agency action if it is

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

I.C. § 4-21.5-5-14(d). In his brief, Dr. Baliga cites the "contrary to constitutional right, power, privilege, or immunity" provision, Appellant's Br. p. 24, but he also emphasizes that the decision of the ALJ and the IHRC to find him in default was a discretionary one and argues that they abused that discretion, *see, e.g., id.* at 36; Reply Br. p. 13. A decision constitutes an abuse of discretion if it is clearly against the logic and effect of the facts and circumstances or the reasonable, probable, and actual deductions to be drawn therefrom. *State v. Collier*, 61 N.E.3d 265, 268 (Ind. 2016). We do not reach Dr. Baliga's constitutional arguments, because, for several reasons, we agree with him that the entry of default in this matter was an abuse of discretion.

[16] First, while it is true that Dr. Baliga did not file a direct response to the administrative complaint, it is also true that the IHRC was well aware that Dr. Baliga denied the accusation underlying the complaint. The same accusation formed the basis for the summary suspension by the Hoosier Park judges, and Dr. Baliga, with the knowledge of the IHRC and its executive director, was actively challenging that suspension both before and after the initiation of the administrative-complaint matter. Second, an IHRC attorney told Dr. Baliga at the October 31 hearing that "[t]he merits hearing will come later" and objected when Dr. Baliga tried to give his side of the story. And third, there is no evidence that the IHRC would have suffered any prejudice if the ALJ had declined to find Dr. Baliga in default. IHRC staff filed their motion for default

only six days after the deadline for Dr. Baliga to request a hearing, and all the relevant events transpired over the course of just thirty-six days—from the filing of the administrative complaint on November 10 through the ALJ's entry of default on December 16. All along, the IHRC was on notice that Dr. Baliga denied the accusation against him.

[17] All of this leads to a more fundamental reason why the ALJ and the IHRC should have allowed this matter to proceed to a hearing on the merits. 71 I.A.C. 10-2, titled "Proceedings by Judges," envisions a disciplinary proceeding initiated by and conducted by on-site judges, without the involvement of the IHRC itself or its executive director. *See* 71 I.A.C. 10-2-2(a) ("On their own motion or on receipt of a complaint from an official or other person regarding the actions of a licensee, the judges may conduct an inquiry and disciplinary hearing regarding a licensee's actions."). 71 I.A.C. 10-3, titled "Proceedings by the Commission," envisions a separate disciplinary proceeding initiated by the IHRC or its executive director. *See* 71 I.A.C. 10-3-1(b); 71 I.A.C. 10-3-20. In this case, however, the seemingly clear line between these two types of proceedings was significantly blurred from the very beginning.

[18] In their October 1 ruling imposing the summary suspension, the Hoosier Park judges, instead of setting a date for a disciplinary hearing under 71 I.A.C. 10-2, stated that the matter "will be referred to the Executive Director of the Indiana Horse Racing Commission for further action." Appellant's App. Vol. II p. 23. The ruling did not say whether this "further action" would occur in the Hoosier Park proceeding under 71 I.A.C. 10-2—regulations that do not contemplate a

role for the executive director—or in a separate IHRC proceeding under 71 I.A.C. 10-3. This is where the confusion started. Then, when the Hoosier Park judges held a hearing on the summary suspension, the IHRC's attorney called the IHRC's executive director as a witness and asked him how the IHRC was planning to proceed. The executive director testified that the IHRC was still investigating and considering whether to take further action. Of course, under 71 I.A.C. 10-2, on-site judges can take disciplinary action regardless of whether the IHRC itself takes action, so this testimony served only to confuse matters further. Finally, at the end of the hearing, the Hoosier Park judges did not schedule a hearing on the merits of the accusation against Dr. Baliga. Rather, the chief judge said that "we should hurry along" and "[w]e should do what we can to get this case heard on the merits," and the IHRC's attorney said that she "[u]nderstood." In other words, the judges left the ball in the IHRC's court.

[19] Taken together, these events created the distinct impression that the Hoosier Park disciplinary proceeding and any IHRC disciplinary proceeding would, for all intents and purposes, be consolidated. Certainly, better practice would have been for Dr. Baliga and his attorney to submit a written request for a hearing after receiving the administrative complaint, even if they thought doing so would be redundant. But they had already been told that "[t]he merits hearing will come later," and they were told that at a hearing where IHRC action was talked about as if it would simply be a continuation of the Hoosier Park proceeding. As such, they should not be faulted—or defaulted—for thinking that another hearing request was unnecessary.

[20] Under these circumstances, we readily conclude that the ALJ and the IHRC abused their discretion by finding Dr. Baliga in default. Therefore, we reverse the dismissal of Dr. Baliga's petition for judicial review and direct the trial court to grant the petition and to remand this matter to the IHRC for a hearing on the merits.

[21] Reversed and remanded.

Pyle, J., and Barnes, Sr. J., concur.