

FILED

Sep 26 2023, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael T. Foster
Greensburg, Indiana

ATTORNEYS FOR APPELLEES

Theodore E. Rokita
Attorney General

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Natalie A. Harves, by Richard E. Harves and Karen Sue (Harves) Cutter, as personal representatives,

*Appellant-Petitioner,*

v.

Daniel Rusyniak, in Individual Capacity as Secretary of Indiana Family and Social Services Administration; Indiana Family and Social Services Administration; and Decatur County Division of Family Resources,

*Appellees-Respondents*

September 26, 2023

Court of Appeals Case No. 23A-PL-671

Appeal from the Decatur Circuit Court

The Honorable David Northam, Special Judge

Trial Court Cause No. 16C01-2007-PL-292

**Opinion by Judge Vaidik**

Court of Appeals of Indiana | Opinion 23A-PL-671 | September 26, 2023          Page 1 of 11

Judges Mathias and Pyle concur.

**Vaidik, Judge.**

# Case Summary

Natalie A. Harves applied for Medicaid nursing-home benefits. The Indiana Family and Social Services Administration (FSSA) denied her application, and after an unsuccessful administrative appeal, Harves petitioned for judicial review.[1] The trial court denied the petition, and Harves appeals. We reverse and remand to the trial court with instructions to grant the petition for judicial review and return the matter back to FSSA for further proceedings.

# Facts and Procedural History

This case concerns several documents that Harves and her children—Karen Sue Cutter, Richard E. Harves, and Ann Harves Bildner—signed on January 25, 2019, when Harves was ninety-one years old. First, Harves appointed Karen as her "Health Care Surrogate" and attorney-in-fact and appointed Richard and Ann as the successor surrogates and attorneys-in-fact. Second, Harves, Karen, and Richard signed a "Personal Service Contract" in which Harves indicated her intent to compensate the children for "the time and expenses incurred" by

---

[1] Harves died a few days after FSSA's initial denial of her application, and her family pursued the case on her behalf, but for simplicity's sake, this opinion will refer to Harves as the petitioner and appellant.

the children "in providing me with assistance and supervision in managing the affairs of my estate, or in providing me with financial management, home health care, nursing care and escort services as required because of my failing health regardless of whether such services were skilled or unskilled[.]" Appellant's App. Vol. II p. 82. According to Harves, the children gave her nearly $900,000 in services from January 2011 to January 2019 and continued providing services after the Personal Service Contract was signed. The contract included the following provision:

> CONSOLIDATE ASSETS. I further agree that I have appointed an attorney-in-fact in a Power of Attorney executed by me to consolidate my liquid and semi-liquid assets into common account(s) held by my living trust or such other trust agreement as my health care agent may elect, provided such alternative trust has the identical beneficiaries as my living trust[.]

*Id.*

Third, the children signed an agreement creating an irrevocable trust, the N. Harves Family Heirs Trust ("the Trust"), and Harves's assets—worth $557,240, according to Harves—were placed in the Trust. The trust agreement named Karen and Richard as the trustees and began with the provisions below tying the Trust to the Personal Service Contract:

> A. (TRUST BENEFICIARIES) WHEREAS, the Trust-maker(s) desire to establish a trust for the segregation, management and distribution of any property transferred as consideration and reimbursement to the trust makers by a payor of any and all health care and assistance [herein after Healthcare Services

Recipient], either skilled or unskilled, provided by any one or more of the trust makers; and

B. (TRUST ASSETS) WHEREAS, concurrently with the execution of this Trust Agreement, or as soon as possible thereafter, all of the right, title and interest in and to the property described in the annexed Schedule A shall be transferred to the Trustee as the property belonging to this trust estate; and

C. (TRUST PURPOSE) WHEREAS, the intent of the Trust is curtail [sic] any and all interest of any health care recipient in the assets transferred to the Trust estate; and to avoid any constructive receipt of the trust assets to the trust makers during the life of any payor of the health care services provided by any one of the trust makers. . . .

*Id.* at 52.

[4] Four months later, in May 2019, Harves applied for Medicaid nursing-home benefits. FSSA denied the application, finding that the assets of the Trust are available to Harves and that as a result her resources exceed the threshold for Medicaid eligibility. Harves filed an administrative appeal, and an administrative law judge (ALJ) affirmed the denial. After FSSA issued a Notice of Final Agency Action affirming the ALJ's order, Harves petitioned for judicial review. The trial court denied the petition and affirmed the ALJ's determination.

[5] Harves now appeals.

# Discussion and Decision

[6] Harves argues the ALJ and trial court erred by finding that the assets of the Trust are resources available to her, making her ineligible for Medicaid nursing-home benefits.[2] In an appeal following a trial court's review of an agency decision, we stand in the shoes of the trial court and owe no deference to its determination. *Baliga v. Ind. Horse Racing Comm'n*, 112 N.E.3d 731, 736 (Ind. Ct. App. 2018), *reh'g denied*, *trans. denied*. The burden of demonstrating the invalidity of agency action is on the party asserting invalidity, and we will reverse only if the agency action was

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14. We defer to the expertise of the administrative body, we may not try the case de novo or substitute our judgment for that of the

---

[2] FSSA found Harves ineligible for three reasons: "VALUE OF RESOURCES EXCEEDS PROGRAM ELIGIBILITY STANDARD"; "INCOME EXCEEDS ELIGIBILITY STANDARDS"; "REFUSAL TO AGREE TO SELL OR RENT NON-EXEMPT REAL PROPERTY." Appellant's App. Vol. II p. 213. FSSA contends that Harves doesn't challenge the second and third grounds, that those grounds are independent bases for the denial, that Harves will therefore be ineligible for Medicaid even if she is correct on the available-resources issue, and that as a result we can affirm without addressing this issue. Harves responds that the real property and the income from the real property belong to the Trust and that as a result "inclusion of the [Trust] caused the denial on these other two grounds." Appellant's Reply Br. p. 7. FSSA gives us no reason to question that assertion, so we will address the merits of Harves's appeal.

agency, and we will not reweigh the evidence. *Brown v. Ind. Fam. & Soc. Servs. Admin.*, 45 N.E.3d 1233, 1235-36 (Ind. Ct. App. 2015).

[7] The Medicaid program, 42 U.S.C. § 1396 et seq., was established by Congress in 1965. As we have explained:

> Its purpose is to provide medical assistance to needy persons whose income and resources are insufficient to meet the expenses of health care. The program operates through a combined scheme of state and federal statutory and regulatory authority. States participating in the Medicaid program must establish reasonable standards for determining eligibility, including the reasonable evaluation of an applicant's income and resources. To qualify for Medicaid, an applicant must meet both an income-eligibility test and a resources-eligibility test. If either the applicant's income or the value of the applicant's resources is too high, the applicant does not qualify for Medicaid.

*Id.* at 1236 (citations omitted).

[8] "Medicaid is a rocky terrain and that terrain is even more treacherous" where, as here, an irrevocable trust is involved. *Id.* at 1237.

> For the first two decades of Medicaid, an irrevocable trust was not considered an asset in determining whether an applicant was sufficiently needy to qualify for Medicaid benefits. During this time, financial advisors and attorneys advised their clients to shelter their assets in irrevocable trusts because a trust settlor was able to qualify for public assistance without depleting his assets. He could therefore once more enjoy those assets if he no longer needed public assistance; and, if such a happy time did not come, could let them pass intact pursuant to the terms of the trust to his heirs. In other words, the settlor "was able to have his cake and eat it too."

> In 1986, Congress closed this "loophole" in the Medicaid act so that assets in certain trusts would be considered in determining whether a Medicaid applicant satisfied the maximum asset requirement. Seven years later, Congress enacted even tighter restrictions, which expanded the types of trusts that could be considered to preclude applicants from Medicaid eligibility.

*Id.* at 1236-37 (cleaned up).

[9] Here, in finding that the assets of the Trust are available resources for Harves, the ALJ relied on subsection (d) of 42 U.S.C. § 1396p, titled "Treatment of trust amounts." That provision states, in relevant part, that the corpus of an irrevocable trust "shall be considered resources available to the individual" if

> (1) assets of the individual were used to form all or part of the corpus of the trust;

> (2) any of the following individuals established such trust other than by will: the individual; the individual's spouse; a person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or the individual's spouse; or a person, including any court or administrative body, acting at the direction or upon the request of the individual or the individual's spouse; and

> (3) there are any circumstances under which payment from the trust could be made to or for the benefit of the individual[.]

42 U.S.C. § 1396p(d)(1), (2)(A), (3)(B)(i).

[10] Harves argues the ALJ should have instead analyzed the Trust under subsection (c) of the statute, entitled "Taking into account certain transfers of assets."

Paragraph (c)(1) provides, in relevant part, that if an institutionalized individual disposed of assets for less than fair market value on or after the statutory "look-back date" (generally, five years before applying for Medicaid), the individual will be ineligible for Medicaid nursing-home benefits for a certain number of months. 42 U.S.C. § 1396p(c)(1)(A)-(E). However, subparagraph (c)(2)(C) provides that an individual is not ineligible under paragraph (c)(1) if a satisfactory showing is made that

> (i) the individual intended to dispose of the assets either at fair market value, or for other valuable consideration, (ii) the assets were transferred exclusively for a purpose other than to qualify for medical assistance, or (iii) all assets transferred for less than fair market value have been returned to the individual[.]

*Id.* at (c)(2)(C). Harves contends that clause (i) applies. Specifically, she asserts that her assets were placed in the Trust to compensate her children for the services they provided her over the years, as envisioned by the Personal Service Contract, and that therefore she disposed of the assets "for other valuable consideration."

[11] This puts the cart before the horse. Only if a Medicaid applicant is otherwise eligible does subsection (c) require FSSA to look back "to determine if any uncompensated or undercompensated transfers of assets were made." *Brown*, 45 N.E.3d at 1236. In other words:

> FSSA makes two decisions when deciding the amount of medical assistance an individual receives to meet the expenses of health care. First FSSA determines eligibility based on the available

resources of the individual. . . . Second, if an individual is found eligible for Medicaid benefits, the FSSA may impose a transfer penalty if any uncompensated or under-compensated transfers of assets were made.

*Id.* at 1237 (footnote omitted). Applied to Harves's situation, this means that before determining whether the transfer of her assets to the Trust made her ineligible under subsection (c), it must first be determined whether the transfer made the assets unavailable to her. If it didn't, she is already ineligible, and ineligibility under the look-back provisions of subsection (c) is a nonissue.

[12] That brings us back to subsection (d) of the statute, and here we find a significant error in the ALJ's analysis. The ALJ concluded that the corpus of the Trust must be considered resources available to Harves after finding that (1) Harves's assets were used to form the corpus of the Trust and (2) the Trust was established by a person with legal authority to act on behalf of Harves. Appellant's App. Vol. II pp. 25-26. Those two findings were correct. Harves acknowledges that "[a]ll of [her] assets were transferred to the [Trust]," Appellant's Br. p. 15, and Karen—Harves's daughter and attorney-in-fact—established the Trust along with Harves's other children. But as noted above, a third element must be satisfied before the corpus of an irrevocable trust can be counted as available resources. That is, there must be circumstances under which payment from the trust could be made to or for the benefit of the individual. 42 U.S.C. § 1396p(d)(3)(B)(i). In her order, the ALJ did not mention that element or discuss any language from the trust agreement that might satisfy

it. Appellant's App. Vol. II pp. 16-28.[3] Similarly, the trial court did not address the element in denying Harves's petition for judicial review. *Id.* at 34-42.

[13] The parties address this third element in their appellate briefs, disputing whether certain provisions in the trust agreement mean that payment from the Trust could be made to Harves or for her benefit. But the agency, not this Court, must adjudicate this issue in the first instance.

> A simple but fundamental rule of administrative law is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

*Dev. Servs. Alternatives, Inc. v. Ind. Fam. & Soc. Servs. Admin.*, 915 N.E.2d 169, 187 (Ind. Ct. App. 2009) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1948)), *trans. denied*. "Remanding the case to the administrative body gives it an opportunity to correct the irregularities in its proceedings as determined by the court. At the same time, it avoids the court's encroachment upon the agency's administrative functions." *Ind. Alcoholic Beverage Comm'n v. Edwards*, 659 N.E.2d 631, 636 (Ind. Ct. App. 1995) (cleaned up); *see also Shoot v. Ind. Fam. & Soc.*

---

[3] At one point in her order, the ALJ stated, "The N. Harves Family Heirs Trust was created for the sole benefit of a Disabled Appointee." Appellant's App. Vol. II p. 25. In the trial court, FSSA acknowledged that the Trust "does not appear to say anything about a disabled appointee" and argued that the court "should disregard this portion of the ALJ's conclusion of law as harmless error." Appellant's App. Vol. III p. 172.

*Servs. Admin.*, 691 N.E.2d 1290, 1293 (Ind. Ct. App. 1998) ("[T]he sole relief either the trial court or the appellate court may grant if an administrative decision is found to be unlawful is to vacate the decision and remand for further determination by the agency."). Therefore, we must reverse the denial of the petition for judicial review and remand to the trial court with instructions to grant the petition and return the matter back to FSSA for further proceedings on the third element.[4]

Reversed and remanded.

Mathias, J., and Pyle, J., concur.

---

[4] Harves's petition for judicial review also included a claim for "42 U.S.C. § 1983 Civil Rights Relief" and a corresponding request for attorney's fees under 42 U.S.C. § 1988. Appellant's App. Vol. III pp. 22-26. The trial court granted summary judgment to FSSA on those issues. On appeal, Harves makes a three-sentence argument that she is entitled to attorney's fees under Section 1988 but doesn't address the merits of the trial court's summary-judgment order on the underlying Section 1983 claim. We therefore affirm the trial court on these issues.