

I N  T H E

# Court of Appeals of Indiana

Monroe County Board of Zoning Appeals,

*Appellant-Respondent*



FILED

Aug 14 2024, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Bedford Recycling, Inc.,

*Appellee-Petitioner*

---

August 14, 2024

Court of Appeals Case No.
23A-MI-1729

Appeal from the Monroe Circuit Court

The Honorable Kara E. Krothe, Judge

Trial Court Cause No.
53C06-2209-MI-1773

---

**Opinion by Judge Vaidik**
Judges Bradford and Kenworthy concur.

**Vaidik, Judge.**

# Case Summary

[1] We have held that an administrative agency generally cannot change a final decision, but if it recognizes its own error of law, it may correct that error. *Essroc Cement Corp. v. Clark Cnty. Bd. of Zoning Appeals*, 122 N.E.3d 881, 896 (Ind. Ct. App. 2019), *trans. denied*. Here, the Monroe County Board of Zoning Appeals ("the BZA") revoked a conditional-use permit it had granted to Bedford Recycling, Inc., for the construction of a scrap-metal recycling facility. The BZA explained that it made an error of law by granting the permit because the facts known at the time showed that the proposed project didn't meet the requirements for the conditional use. Bedford Recycling sought judicial review, and the trial court reversed the revocation. But the court didn't decide whether the BZA made an error of law by granting the permit. Rather, citing statements by a single board member, the court determined that the BZA revoked the permit based on new information and a change of reasoning. In other words, the court found that even if the BZA made an error of law when it granted the permit, that wasn't the BZA's real reason for revoking the permit.

[2] The BZA appeals, and we reverse. In its revocation vote and its written findings and conclusions, the BZA explained that it revoked the permit because it believed, based on the facts known at the time of the original decision, that it made an error of law by granting the permit. The trial court erred by looking beyond that explanation to determine for itself what prompted the revocation.

We also hold that the BZA did, in fact, make an error of law by granting the permit and was therefore allowed to change that decision.

## Facts and Procedural History[1]

The Monroe County Zoning Ordinance (Title 8 of the Monroe County Code) establishes eighteen zoning classifications, such as Urban Residential, General Business, and Heavy Industrial, and specifies the land uses that are permitted under each classification. Of the permitted uses, some are presumptively allowed, and others—known as "conditional uses"—are allowed only if specific conditions are met and the BZA grants a conditional-use permit. If a desired use isn't permitted in the applicable zoning classification, either presumptively or as a conditional use, the party seeking the use must request a "use variance," a rezoning of the property at issue to a classification that allows the use, or an amendment of the Zoning Ordinance to make the use permissible in the existing zoning classification. *See generally* Ind. Code §§ 36-7-4-601 to 616, 901 to 924.

Bedford Recycling owns land in Monroe County and wants to build a facility for the collection and sorting of scrap metal that will later be transported off-site for recycling. The land is zoned Mineral Extraction. Only a handful of uses are presumptively allowed in such a zone (e.g., mineral extraction, composting

---

[1] We held oral argument on July 22, 2024. We thank counsel for their presentations.

operations, greenfill), and scrap-metal recycling isn't one of them. Bedford Recycling applied for a conditional-use permit.[2]

[5] Bedford Recycling's application, submitted on August 4, 2021, described the proposed facility and then stated, "Based on discussions with County Planning Department Staff, the County Zoning Ordinance does not include development and operational standards for this specific type of facility. As such, we are seeking a Conditional Use Approval under the standards for a Central Garbage/Rubbish [Collection] Facility." Appellant's App. Vol. III p. 6. A Central Garbage/Rubbish Collection Facility, a permitted conditional use in a Mineral Extraction zone, is defined by the Zoning Ordinance as follows:

> Public or private establishments contracted to remove solid waste from residential or commercial uses and transport such wastes to a locally operated public or private landfill or other waste collection facility, designated for consolidation of garbage and recycled matter.

*Id.* at 30. In its application, Bedford Recycling acknowledged that its proposed facility would not "handle solid waste" or "operate waste hauling vehicles." *Id.* at 6.

[6] The BZA held a hearing on Bedford Recycling's application on September 1, 2021. The county planning department introduced the application and

---

[2] While this matter was pending before the BZA, an ordinance amendment that would have specifically allowed for Bedford Recycling's proposed use was considered but ultimately rejected. *See* Appellant's App. Vol. III pp. 148, 156, 159.

recommended approval. A Bedford Recycling representative spoke in support of the application but acknowledged:

> The Conditional Use approval is for a Central Garbage/Rubbish [Collection] Facility, which that particular description and definition is meant to apply to a facility that handles solid waste, which the facility that we are proposing here doesn't handle solid waste. What it does is handle ferrous and nonferrous metals for recycling. It is essentially a scrap yard. They will accept metal both ferrous and nonferrous from the general public and process it, sort it at the facility and send it on for further processing at other facilities. The only materials that will be handled there are metals. They won't be accepting like general household waste or, you know, hazardous materials or anything that meets the definitions of solid wastes.

*Id.* at 52. No one spoke in opposition to the proposal. The BZA then took a vote. Member Bernie Guerrettaz wasn't present, and member Skip Daley abstained due to technical difficulties, but the other three members—Mary Beth Kaczmarczyk, Vicky Sorensen, and Margaret Clements—voted 3-0 to grant the conditional-use permit.

[7] On October 1, 2021, Republic Services—which owns property near Bedford Recycling's property—petitioned for judicial review of the BZA's decision. *See* Cause No. 53C06-2110-MI-2052. It claimed, in part, that Bedford Recycling hadn't satisfied the requirements for a Central Garbage/Rubbish Collection Facility conditional use. The BZA initially opposed the petition and defended

the permit in a response filed on November 28.[3] A week later, however, the BZA posted notice that on December 15 it would hold a private executive session for "[d]iscussion of strategy with respect to pending litigation," followed by a public special meeting "[t]o take action as deemed appropriate" regarding Bedford Recycling's permit. Appellant's App. Vol. III pp. 56, 58.

[8] At the special meeting, county attorney David Schilling explained that he began questioning the permit decision while he was preparing written findings in support of the decision. *See* I.C. § 36-7-4-915 ("The board shall in all cases heard by it make written findings of fact."). Schilling became concerned that Bedford Recycling's proposed facility doesn't fit the definition of Central Garbage/Rubbish Collection Facility:

> In preparing the written findings in support of the Board's order I think it became apparent that the threshold issue of whether the use proposed by Bedford Recycling was actually a Central Garbage/Rubbish Collection Facility and whether the use was one of the uses that the Board is authorized to grant a Conditional Use for. In preparing the findings it became clear to me that there was a problem with the proposed use satisfying all of the elements of the Central Garbage/Rubbish Collection Facility. That particular use is one that involves solid waste, the transportation of solid waste under contract from residences and commercial interests and Bedford in its description of what it proposed to do stated that it was not going to be handling solid waste in any way, shape, or form that it was not going to be collecting it from residences and commercial entities and it

---

[3] Bedford Recycling has moved for us to take judicial notice of Republic Services' petition for judicial review and the BZA's response to that petition. We grant that motion in a separate order issued today.

wasn't going to be transferring solid waste. So, I present that to the Board, while the facts are not in dispute, neglected to apply those facts to the definition of Central Garbage/Rubbish Collection Facility and in my opinion that is an error of law. So, I think the meeting tonight is to discuss how to address this and a couple of options I think exist. One I think would be to just move forward with the appeal that has been filed in that case by Republic Services, adopt the staff's findings of fact if the Board disagrees with me and doesn't think there is an error. If the Board thinks there has been an error, it seems there a couple things to be done and one would be to conduct a hearing on the revoking of the Conditional Use Approval and give Bedford Recycling an opportunity to address that to weigh in whether a mistake was made, a mistake of law and at the same time possibly working with the parties to an agreed entry to the appeal. So, those are the options that I present to the Board tonight and I would take any questions you might have.

Appellant's App. Vol. III p. 60. Schilling's comments alluded to the principle that an administrative agency generally cannot change a final decision but can do so if it made an error of law. *See Essroc Cement Corp. v. Clark Cnty. Bd. of Zoning Appeals*, 122 N.E.3d 881, 896 (Ind. Ct. App. 2019), *trans. denied*.

[9] Following Schilling's presentation and a short discussion, the full BZA voted unanimously to hold a hearing "to determine whether the Board erred as a matter of law by concluding that [the] use proposed by Bedford Recycling, Inc., was a Central Garbage/Rubbish Collection Facility Use for which a Conditional Use could be granted." Appellant's App. Vol. III p. 61. After that vote, the trial court in Republic Services' judicial-review case issued an order staying those proceedings.

[10] The BZA hearing on the possible revocation of Bedford Recycling's permit was held on June 29, 2022. (The parties don't explain the six-month delay, but it appears to have been caused at least in part by the unsuccessful effort to amend the Zoning Ordinance to allow for Bedford Recycling's proposed use. *See* footnote 2.) By that time, the BZA consisted of Clements, Daley, and two new members—Guy Loftman and Dee Owens. The fifth spot was vacant. Clements, Daley, and Loftman were present for the hearing; Owens was not. Schilling again argued that the BZA made an error of law by granting the permit; Bedford Recycling's attorney argued the opposite. After some questions and answers and further discussion, the members present took a vote on whether to revoke the permit based on an error of law. Clements and Loftman voted to revoke, but Daley voted to uphold the permit. Because there were not three votes one way or the other, the matter was continued until the BZA meeting on August 3.

[11] By the time of the August hearing, the BZA again had five members: Clements, Daley, Loftman, Owens, and Pamela Davidson. All five members were present. There were further discussions and arguments from counsel, and then Loftman made the following motion: "I move based on the testimony and materials presented to the BZA during its September 202[1] hearing on docket item CDU-21-3 that the BZA erroneously concluded that the use of proposed facility by Bedford Recycling [sic] constituted a Central Garbage/Rubbish Collection Facility Use, therefore that decision should be reversed." *Id.* at 160. The

members voted 3-2 to pass the motion, with Clements, Loftman, and Davidson voting yes and Daley and Owens voting no.

[12] After that hearing and vote, the BZA entered written findings and conclusions in support of its decision. (The copy in the BZA's appendix is undated and unsigned, *see id.* at 162-68, but neither party disputes its accuracy.) The BZA reiterated that it had made an error of law by granting the permit and set forth the basis for that conclusion:

> 50. [Bedford Recycling's] proposed scrap yard facility use would not accept general household waste or anything that meets the definition of solid waste.
>
> 51. [Bedford Recycling's] proposed scrap yard facility use did not include the removal of solid waste from residential or commercial uses.
>
> 52. [Bedford Recycling's] proposed scrap yard facility use did not include the transportation of solid waste or the use of waste hauling vehicles.
>
> 53. [Bedford Recycling's] proposed scrap yard facility use did not include transporting solid waste to a locally operated landfill.
>
> \*     \*     \*     \*
>
> 62. [Bedford Recycling's] proposed scrap yard facility use is not within of the class of cases for which the BZA is authorized to grant a conditional use approval.

63. [Bedford Recycling's] proposed scrap yard facility use did not satisfy the particular situations in which the BZA is authorized to grant a conditional use approval.

64. On September 1, 2021, the BZA acted beyond its legal authority, and thus committed legal error, by granting [Bedford Recycling's] proposed scrap yard facility a conditional use approval as a Central Garbage/Rubbish Collection Facility.

65. The BZA's September 1, 2021, conditional use approval of [Bedford Recycling's] proposed scrap yard facility was ultra vires and void.

*Id.* at 167-68.

[13] In September 2022, with a stay still in place on Republic Services' challenge to the initial permit decision, Bedford Recycling filed its own petition for judicial review challenging the revocation of the permit. After briefing and oral argument, the trial court issued an order granting Bedford Recycling's petition, vacating the revocation order, and reinstating the permit. Citing comments made by BZA member Clements during the 2022 hearings, the court concluded that the BZA revoked the permit based on "mistakes of fact and a change of reasoning" rather than an error of law. Appellant's App. Vol. II pp. 39, 43. But the court added that it was "only reviewing the Revocation Order" and that whether the permit was properly granted in the first place is an issue in the other judicial-review proceeding. *Id.* at 43-44. In other words, the court didn't decide whether the BZA made an error of law by granting the permit; it only

decided that an error of law—if there was one—was not the BZA's real reason for revoking the permit.

[14] The BZA now appeals. Republic Services' judicial-review action challenging the initial permit decision is still pending in the trial court. It is fully briefed, but the parties have agreed that the court can hold off on ruling until we have decided this appeal. *See* Cause No. 53C06-2110-MI-2052.

## Discussion and Decision

[15] The BZA contends the trial court erred by granting Bedford Recycling's petition for judicial review. Judicial review of zoning-board decisions is governed by Indiana Code sections 1601-1616. "The burden of demonstrating the invalidity of a zoning decision is on the party to the judicial review proceeding asserting invalidity." I.C. § 36-7-4-1614(a). The reviewing court should grant relief only if it determines that the person seeking relief has been prejudiced by a zoning decision that is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) contrary to constitutional right, power, privilege, or immunity;
>
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

*Id.* at (d). A trial court and an appellate court both review the decision of a zoning board under this same standard. *St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh Cnty.*, 873 N.E.2d 598, 600 (Ind. 2007). In other words, we stand in the shoes of the trial court and owe no deference to its decision. *See Baliga v. Ind. Horse Racing Comm'n*, 112 N.E.3d 731, 736 (Ind. Ct. App. 2019), *reh'g denied*, *trans. denied*.

[16] The issue here, broadly stated, is whether the BZA had the power (Bedford Recycling calls it "jurisdiction") to revoke the conditional-use permit. The parties agree on the governing legal principles:

> Power to undo an act once done will not be implied from the mere grant of power, in the exercise of a sound discretion, to do the act. Accordingly, unless the legislature has given clear authority to revoke final determinations, administrative bodies do not have the power to change their minds after a final determination. This rule is not absolute, however, for when an administrative agency recognizes its own error of law, it may correct that error. A mistake of law occurs when a party, having full knowledge of the facts, comes to an erroneous conclusion as to their legal effect. Thus, in order to show an error of law occurred, the agency must cite to a statute, legal principle, or change in case law that was neglected or misapplied to the facts. The reversal must be required by an actual error of law, not simply a change of reasoning.

*Essroc Cement Corp. v. Clark Cnty. Bd. of Zoning Appeals*, 122 N.E.3d 881, 896-97 (Ind. Ct. App. 2019) (cleaned up), *trans. denied*. The BZA doesn't claim there is

a statute that authorized it to revoke Bedford Recycling's permit. Rather, it relies on the common-law exception: "when an administrative agency recognizes its own error of law, it may correct that error."

[17] The BZA argues the trial court erred by concluding that the revocation decision was based on "mistakes of fact and a change of reasoning." It contends that Bedford Recycling's proposed scrap-metal recycling facility doesn't fit the Zoning Ordinance's definition of Central Garbage/Rubbish Collection Facility, that it therefore made an error of law by granting the permit, that this is why it revoked the permit, and that it explained as much in its written findings and conclusions.

[18] Bedford Recycling, on the other hand, doesn't address the Zoning Ordinance (other than a few sentences in its Statement of Facts) and doesn't otherwise respond to the BZA's argument that it made an error of law by granting the permit. Rather, following the trial court's lead, it argues that statements by individual BZA members during the 2022 hearings show that the BZA revoked the permit based on a new understanding of the facts and a change of reasoning. For example, at the June 2022 hearing, BZA member Clements said:

> I believe I made an error in my vote and I think that it wasn't clear to me about the rubbish/waste removal delineation versus scrap metal sorting and processing and the different complexities that go into lines of business that could result in possible environmental damage[.]

Appellant's App. Vol. III p. 116. She added:

> So, for me what I came to understand, which was something that
> I was not well steeped in before, and that is the intricacy of waste
> processing, scrap metal processing and various values for that
> and the economy related to that and what potential ramifications
> it could have for our county, for our environment so I gained
> new appreciation for the complexity of the zoning descriptions
> and how precise they are and I did not understand that before
> this case.

*Id.* at 117. Also at the June 2022 hearing, member Loftman said he could "see it either way" but that he would vote to revoke the permit because he wanted the BZA "to be decisive" and didn't want to "leave this in limbo." *Id.* at 116. At the August 2022 hearing, Loftman asked factual questions about the nature of Bedford Recycling's proposed use, including:

> I am looking at this definition and it seems to have recycled
> matter and is certainly addressed in this definition that I am
> looking at. But it says public or private establishments contracted
> to remove solid waste from residential or commercial uses and
> transport such wastes. Are you all, is Bedford Recycling
> transporting these recyclable materials to the site?

*Id.* at 151. Similarly, member Owens asked about the possibility of this being an auto junkyard:

> [M]y understanding is it is mostly going to be used for
> automobiles. Yes, it will have other uses but it will be used for
> automobiles to break them down and then take them to the
> Bedford facility. What does that entail if in fact we used the
> wrong section of law and therefore it is an error then what would

> Bedford Facility [sic] be able to do? Could they then come back and say we want a Conditional Use under that part of the law and we vote again. Is that what can happen?

*Id.* at 159.

[19] These comments and questions, read in isolation, might suggest that the revocation was based on new, impermissible considerations. But the minutes of the 2022 hearings span more than thirty pages and also include repeated reminders that any revocation must be based on the evidence available at the time of the original permit decision in September 2021. *See id.* at 100-18, 147-60. More importantly, these discussions were followed by the full BZA's vote and written findings and conclusions, which show that the BZA was careful to limit its ultimate decision to whether it made an error of law back in September 2021.

[20] The vote at the end of the August 2022 hearing was taken on the following motion by member Loftman: "I move **based on the testimony and materials presented to the BZA during its September 202[1] hearing** on docket item CDU-21-3 that the BZA erroneously concluded that the use of proposed facility by Bedford Recycling [sic] constituted a Central Garbage/Rubbish Collection Facility Use, therefore that decision should be reversed." (Emphasis added.) After the vote, the BZA entered written findings and conclusions, including: "**On September 1, 2021,** the BZA acted beyond its legal authority, and thus committed legal error, by granting [Bedford Recycling's] proposed scrap yard facility a conditional use approval as a Central Garbage/Rubbish Collection

Facility." (Emphasis added.) The findings in support of this conclusion made no mention of any new information discussed during the 2022 hearings. The BZA found, among other things, that Bedford Recycling's proposed use "would not accept general household waste or anything that meets the definition of solid waste," "did not include the removal of solid waste from residential or commercial uses," "did not include the transportation of solid waste or the use of waste hauling vehicles," and "did not include transporting solid waste to a locally operated landfill." Bedford Recycling doesn't dispute that the BZA knew these facts when it granted the permit. Indeed, Bedford Recycling itself provided this information when it applied for the permit.

[21]   Bedford Recycling contends that the BZA's formal vote and subsequent findings and conclusions were merely a "pretext." Appellee's Br. p. 17. In other words, Bedford Recycling would have us hold that the BZA was trying to cover up the fact that it considered new information and changed its mind about the project. But it doesn't cite any authority that would allow us to simply disregard the BZA's vote and written order. If anything, Indiana law is the opposite. As our Supreme Court has explained, "judicial inquiries into the private motivation or reasoning of administrative decisionmakers is a substantial intrusion into the functions of the other branches of government." *Med. Licensing Bd. of Ind. v. Provisor*, 669 N.E.2d 406, 410 (Ind. 1996). Because the BZA's vote and subsequent findings and conclusions were limited to information known in September 2021, the trial court erred by concluding that

the revocation decision was based on mistakes of fact and a change of reasoning.

[22]   That leaves only the question Bedford Recycling chose not to address on appeal: did the BZA, in fact, make an error of law by granting the permit? We agree with the BZA that it did. Again, the Zoning Ordinance defines Central Garbage/Rubbish Collection Facility as follows:

> Public or private establishments contracted to remove solid waste from residential or commercial uses and transport such wastes to a locally operated public or private landfill or other waste collection facility, designated for consolidation of garbage and recycled matter.

This definition is clearly directed at typical garbage and recycling haulers. Bedford Recycling is proposing a scrap-metal recycling facility; it would not be picking up solid waste from homes and businesses. It conceded as much in its application, where it acknowledged that the facility would not "handle solid waste" or "operate waste hauling vehicles," and at the first hearing, where it said that the "description and definition is meant to apply to a facility that handles solid waste, which the facility that we are proposing here doesn't handle solid waste." Because the proposed facility doesn't meet the requirements for the Central Garbage/Rubbish Collection Facility, the BZA made an error of law by granting the permit and was allowed to correct that error.

[23] One final note. At oral argument, Bedford Recycling asserted that the BZA's revocation decision—which came eleven months after the permit was granted—was untimely. Citing our opinion in *Dale Bland Trucking, Inc. v. Calcar Quarries, Inc.*, 417 N.E.2d 1157 (Ind. Ct. App. 1981), it argued that any change to a final agency decision must occur within a reasonable amount of time and that a reasonable amount of time in the zoning context is thirty days, the same amount of time allowed for the filing of a petition for judicial review. *See* I.C. § 36-7-4-1605. However, Bedford Recycling failed to raise this issue before the BZA, before the trial court, or in its appellate brief. If it had made the argument sooner, the BZA would have had a chance to respond and we would have a more developed record on the delayed revocation. By failing to do so, Bedford Recycling waived the issue.[4]

[24] For these reasons, we reverse the trial court's grant of Bedford Recycling's petition for judicial review.

[25] Reversed.

Bradford, J., and Kenworthy, J., concur.

---

[4] Bedford Recycling also asserted at oral argument that an agency's authority to correct a final decision should be limited to clerical or ministerial errors. Bedford Recycling didn't make this argument before the BZA or before the trial court. It briefly hinted at such a limitation in its appellate brief but didn't develop an argument. *See* Appellee's Br. p. 38. Therefore, Bedford Recycling waived this issue as well.

ATTORNEY FOR APPELLANT

David B. Schilling
County Attorney
Bloomington, Indiana


ATTORNEYS FOR APPELLEE

Dustin L. Plummer
Patrick A. Ziepolt
Mallor Grodner LLP
Bloomington, Indiana